1  **MUSICK, PEELER & GARRETT LLP**
ATTORNEYS AT LAW
2  ONE WILSHIRE BOULEVARD, SUITE 2000
LOS ANGELES, CALIFORNIA 90017-3383
TELEPHONE (213) 629-7600
3  FACSIMILE (213) 624-1376

4  Cameron W. Thomas (State Bar No. 210237)
c.thomas@mpglaw.com
Erin M. Donovan (State Bar No. 227697)
5  e.donovan@mpglaw.com
Reid E. Dammann (State Bar No. 249031)
6  r.dammann@mpglaw.com

7  Attorneys for Defendant T-MOBILE USA, INC.

8

9

10  **UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

11

12

| | |
|---|---|
| 13 M. STRASNER, an individual, | CASE NO. 3:14-CV-2635-H-MDD |
| 14 Plaintiff, | [Assigned to Judge Marilyn L. Huff and Magistrate Judge Mitchell D. Dembin] |
| 15 vs. | |
| 16 T-MOBILE USA, INC., a Delaware Corporation; DOE T-MOBILE AGENT, an individual; and DOES 2-100, inclusive, | **T-MOBILE USA, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY CLAIMS AGAINST T-MOBILE** |
| 17 Defendants. | |
| 18 | |
| 19 | Date:    April 6, 2015 |
| 20 | Time:    10:30 a.m.  Ctrm:   15A |
| 21 | |

22

23  **TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

24  **PLEASE TAKE NOTICE** that on April 6, 2015 at 10:30 a.m., or as soon

25  thereafter as the matter may be heard in Courtroom 15A of the above-entitled Court,

26  located at 333 West Broadway, San Diego, California 92101, Defendant T-Mobile

27  USA, Inc. ("T-Mobile") will move this Court, pursuant to 9 U.S.C. §§ 2, 3 and 4, for

28  an Order to compel Plaintiff M. Strasner ("Plaintiff") to arbitrate her claims in this

1 | action against T-Mobile and to stay all claims in this action against T-Mobile until
2 | the arbitration claims are completed.

3 |     This Motion is based upon this Notice of Motion and Motion, the attached
4 | Memorandum of Points and Authorities, the concurrently filed Declarations of Tami
5 | Shwonek and Cameron W. Thomas, with attached exhibits, all pertinent pleadings
6 | and papers currently on file with this Court, all matters of which the Court may or
7 | must take judicial notice, and such oral and other documentary evidence as may be
8 | presented at the hearing of this Motion.

10 | DATED: February 20, 2015       MUSICK, PEELER & GARRETT LLP

By: _____/s/_____

Cameron W. Thomas
Attorneys for Defendant T-MOBILE USA,
INC.

MUSICK, PEELER & GARRETT LLP

ATTORNEYS AT LAW

T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS AGAINST T-MOBILE

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................. 1

II.  ISSUE TO BE DECIDED ...................................................... 2

III. PROCEDURAL BACKGROUND ........................................... 2

IV.  FACTUAL BACKGROUND ................................................... 3

    A.   Plaintiff's Activation Of T-Mobile Service ................................. 3

    B.   Plaintiff's Acceptance Of Upgrades And Contract Extensions .............. 4

    C.   Plaintiff Contractually Agreed To Arbitrate Any Dispute ................... 4

    D.   The Arbitration Agreement Was Disclosed Repeatedly ...................... 5

    E.   The June 2010 Terms & Conditions Are Applicable To Plaintiff's Service ...................................................................... 6

        1.   The Arbitration Agreement Is Prominently Displayed ............. 6

        2.   T-Mobile's Arbitration Agreement Allows Full Remedies At Minimal Cost ..................................................... 7

        3.   Plaintiff Never Exercised Her Right To Opt Out Of Arbitration ......................................................................... 8

        4.   Plaintiff's Contract Is Governed By Federal And California Law ..................................................................... 9

    F.   Plaintiff Has Not Agreed To Arbitrate Her Dispute With T-Mobile ....................................................................... 10

V.   LEGAL ARGUMENT ........................................................ 10

    A.   The FAA Reflects A Strong National Policy Favoring Arbitration ....................................................................... 10

    B.   Plaintiff's Claims Fall Within The Scope Of The Arbitration Agreement ..................................................................... 11

    C.   The Contractual Choice Of Laws Is Enforceable ......................... 12

    D.   The Arbitration Agreement Is Fully Enforceable Under California Law ..................................................................... 13

    E.   The FAA Would Preempt A Determination That Plaintiff's Arbitration Agreement Is Unenforceable ................................. 15

VI.  CONCLUSION ................................................................ 17

**T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE**

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4

*Am. Software, Inc. v. Ali,*
5
    46 Cal.App.4th 1386 (1996) ................................................................. 15

6

*AT&T LLC v. Concepcion,*
7
    131 S. Ct. 1740 (2011) ............................................... 1, 12, 13, 14

8

*AT&T Tech. Inc. v. Communications Workers of Am.,*
9
    475 U.S. 643 (1986) ...................................................................... 11

10

*Britton v. Co-op Banking Group,*
    4 F.3d 742 (9th Cir. 1993) .............................................................. 11
11

12

*Cardenas v. Chase Manhattan Bank USA, N.A.,*
    2006 WL 1454778 (Cal. App. May 26, 2006) ............................. 13
13

14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
    207 F.3d 1126 (9th Cir. 2000) ................................................. 10, 11

15

*Circuit City Stores, Inc. v. Ahmed,*
16
    283 F.3d 1198 (9th Cir. 2002) ....................................................... 13

17

*Circuit City Stores, Inc. v. Najd,*
18
    294 F.3d 1104 (9th Cir. 2002) ....................................................... 14

19

*Dean Witter Reynolds, Inc. v. Byrd,*
20
    470 U.S. 213 (1985) ...................................................................... 10

21

*Dean Witter Reynolds, Inc. v. Super. Ct.,*
22
    211 Cal.App.3d 758 (1989) ........................................................... 16

23

*In re DirecTV Early Cancellation Fee Litig.,*
    2009 WL 2912656 (C.D. Cal. 2009) ....................................... 12, 13
24

25

*Discover Bank v. Super. Ct.,*
    36 Cal.4th 148 (2005) .......................................................... 12, 13, 15

26

*Doctor's Assocs., Inc. v. Casarotto,*
27
    517 U.S. 681 (1996) ................................................................. 11, 15

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002) ...................................................................... 9

*Engalla v. Permanente Med. Grp., Inc.*,
  15 Cal.4th 951 (1997) ................................................................. 13

*Gatton v. T-Mobile USA, Inc.*,
  152 Cal.App.4th 571 (2007) ....................................................... 13

*Gatton v. T-Mobile USA, Inc.*,
  2003 WL 21530185 (C.D. Cal. 2003) at *10 ............................... 14

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991) ........................................................................ 9

*Jackson v. S.A.W. Entm't Ltd.*,
  629 F.Supp.2d 1018 (N.D. Cal. 2009) ........................................ 14

*In re Jamster Marketing Litigation*,
  2008 WL 4858506 ........................................................................ 14

*Mastrobuono v. Shearson Lehman Hutton, Inc.*,
  514 U.S. 52 (1995); ..................................................................... 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .......................................................................... 9

*Nedlloyd Lines B.V. v. Super. Ct.*,
  3 Cal.4th 459 (1992) .................................................................... 12

*Patton v. Cox*,
  276 F.3d 493 (9th Cir. 2002) ....................................................... 12

*Preston v. Ferrer*,
  552 U.S. 346 (2008) ....................................................................... 9

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ....................................................... 11

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984) ..................................................................... 9, 11

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ................................................................. 9, 14

T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS AGAINST T-MOBILE

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

*Volt Info. Sciences, Inc. v. Bd. of Trustees,*
    489 U.S. 468 (1989) ................................................................. 9, 17

*Washington Mut. Bank v. Super. Ct.,*
    24 Cal.4th 906 (2001) ................................................................ 12

*Wayne v. Staples, Inc.,*
    135 Cal.App.4th 466 (2006) ....................................................... 16

**STATUTES**

4 U.S.C. §§ 122(a) ......................................................................... 9

9 U.S.C. § 2 ............................................................................ 1, 9, 15

9 U.S.C. § 4 ................................................................................ 16

T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS AGAINST T-MOBILE

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff M. Strasner ("Plaintiff" or "Ms. Strasner") alleges that when she returned her Android phone to Defendant T-Mobile USA, Inc. ("T-Mobile") in order to switch to an iPhone, her phone had numerous photos on it, including intimate and private partially nude photos of Plaintiff.  Instead of deleting these photos herself, Plaintiff alleges that she requested that T-Mobile delete her photos and personal information before her phone was refurbished for resale.  During the refurbishment process, Plaintiff alleges that her private photos and data were viewed by an agent of T-Mobile and that one of the nude photos was uploaded to her Facebook account from her Android phone.

Based on these allegations, Plaintiff has asserted the following causes of action against T-Mobile, "Doe T-Mobile Agent" and Defendant Ingram Micro, Inc.: (1) invasion of privacy; (2) public disclosure of private facts; (3) intrusion upon seclusion; (4) intentional infliction of emotional distress; (5) negligent infliction of emotional distress; (6) negligence; and (7) violation of California Unfair Competition Law, California Business & Professions Code section 17200 et seq. Plaintiff seeks punitive damages in connection with her first, second, third and fourth causes of action.[1]

Plaintiff's claims against T-Mobile do not belong in this Court, but instead should be referred to arbitration.  When Plaintiff signed up for T-Mobile service in 2007 and when she renewed and extended her service in 2010, Plaintiff accepted contract terms providing that *all disputes* would be resolved by arbitration.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 *et seq.*, establishes a strong presumption in favor of arbitration, and the Act directs and the Supreme Court has underscored that arbitration agreements must be enforced according to

---

[1]   Plaintiff's claims for punitive damages are subject to a pending motion to strike.

1 their terms.  *AT&T LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ("*Concepcion*")

2 (holding that FAA preempts conflicting California law and finding arbitration

3 agreements enforceable.)  This Court's role is to move the parties out of court and

4 into arbitration as quickly as possible.

5      Under the FAA and California law, T-Mobile's arbitration agreement is fully

6 enforceable and cannot be deemed unconscionable because Plaintiff had ample

7 opportunity to opt out of arbitration but did not do so.  Accordingly, T-Mobile's

8 motion to compel arbitration should be granted and all claims against T-Mobile

9 should be stayed pending arbitration.

10 **II.**    **ISSUE TO BE DECIDED**

11      Whether Plaintiff's claims should be compelled to individual arbitration and

12 whether this action should be stayed in accordance with the terms of her T-Mobile

13 contracts, the FAA, 9 U.S.C. §§ 2, 3 and 4, and other applicable federal and

14 California state law.

15 **III.**    **PROCEDURAL BACKGROUND**

16      On or about May 1, 2014, Plaintiff filed this action identifying "T-Mobile

17 Corporation" and "Doe T-Mobile Agent" as defendants.

18      On August 4, 2014, Plaintiff filed an Amendment to Complaint identifying

19 the proper defendant, T-Mobile USA, Inc.  Plaintiff served T-Mobile with the

20 Complaint on or about October 6, 2014.

21      On November 5, 2014, T-Mobile filed a Notice of Removal to this Court on

22 the grounds of diversity jurisdiction.

23      On November 12, 2014, T-Mobile filed a Motion to Strike Punitive Damages

24 from Plaintiff's Complaint.  On November 19, 2014, T-Mobile filed a Motion to

25 Compel Arbitration and Stay Claims.  Both motions were scheduled to be heard on

26 March 16, 2015.

27      On January 23, 2015, Plaintiff filed a First Amended Complaint adding

28 Defendant Ingram Micro, Inc. as a Doe defendant.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

932990.1          2           Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE

On January 28, 2015, Plaintiff filed a Motion for Remand on the grounds that the addition of Ingram Micro, Inc. as a defendant destroyed diversity jurisdiction.

On January 29, 2015, the Court issued an order stating that the Motion for Remand would be submitted on the papers. Based on the filing of the First Amended Complaint, the Court also denied without prejudice T-Mobile's Motion to Strike and Motion to Compel Arbitration as moot and vacated the hearing dates.

On February 13, 2015, Plaintiff and T-Mobile filed a joint motion to extend T-Mobile's time to answer or otherwise respond to the First Amended Complaint until February 20, 2015. The joint motion was granted by the Court on February 17, 2015.

## IV.   **FACTUAL BACKGROUND**

### A.   **Plaintiff's Activation Of T-Mobile Service**

Plaintiff initially signed up for T-Mobile service in February 2007 through an indirect dealer, Wireless Waves, in Los Angeles, California. Declaration of Tami Shwonek ("Shwonek Decl.") at ¶ 3. Plaintiff maintained this account (the "71" line of service) with T-Mobile until April 8, 2012 when she canceled her service. *Id.* Plaintiff had a second line of service active from February 4, 2008 until December 8, 2009 (the "12" line of service). Besides the fact that Plaintiff signed up for another T-Mobile service line and agreed to the same or similar contract terms, this line of service is not relevant to Plaintiff's current dispute with T-Mobile. *Id.*, ¶ 4.

Plaintiff entered into contracts with T-Mobile each time she activated a line of service on her account. All customers who purchase T-Mobile service through indirect dealers such as Wireless Waves are required to accept T-Mobile's Terms and Conditions of service ("Terms & Conditions"). Likewise, customers who activate service directly with T-Mobile – whether in a T-Mobile store, by calling T-Mobile Customer Care or through the T-Mobile website – must also accept the Terms and Conditions. *Id.*, ¶ 5. T-Mobile's Terms & Conditions contain an arbitration provision. *Id.* at ¶ 17.

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW
932990.1
3
Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS AGAINST T-MOBILE

**B.**     <u>Plaintiff's Acceptance Of Upgrades And Contract Extensions</u>

T-Mobile's records reflect that Plaintiff accepted a contract extension and renewal on her T-Mobile "71" line of service on July 22, 2010 at a T-Mobile store location.  Plaintiff agreed to a two-year contract extension in exchange for a discounted price on her handset.  Shwonek Decl., ¶ 6.

When Plaintiff accepted a discount offer, she was required to accept the T-Mobile Terms & Conditions.  *Id.*, ¶ 18-20.  In all instances when customers renew or extend their T-Mobile service agreements in response to handset upgrade offers or for other reasons, T-Mobile asks customers to confirm that they accept the Terms & Conditions that govern their service.  *Id.*  Plaintiff accepted these Terms & Conditions.  *Id.*, ¶¶ 9-13.  In addition to agreeing to accept T-Mobile's Terms and Conditions, the upgrade contract that Ms. Strasner signed on July 22, 2010 also stated as follows: "By signing this form or activating or using T-Mobile service, I acknowledge and agree that: . . . **T-MOBILE REQUIRES ARBITRATION OF DISPUTES UNLESS I OPTED OUT PURSUANT TO T-MOBILE'S TERMS AND CONDITIONS.**" *Id.*, Ex. C.

**C.**     <u>Plaintiff Contractually Agreed To Arbitrate Any Dispute</u>

T-Mobile's customer contracts have included a provision calling for individual arbitration of disputes since 2001.  Each time Plaintiff accepted, renewed and/or extended her T-Mobile service and accepted the T-Mobile Terms & Conditions again, she confirmed her agreement to arbitrate.  Shwonek Decl., ¶ 17.

In addition, each time Plaintiff activated a T-Mobile line of service or took a discount handset offer, she was allowed a trial period of 30 days to review the Terms & Conditions and try out the service and handset.  The trial, or return, period is reflected in paragraph 4 of the Terms & Conditions.  *Id.*, ¶ 14.

The trial period under T-Mobile's Terms & Conditions allowed that if Plaintiff was dissatisfied for any reason after activating a line of service, purchasing a new phone or otherwise extending her contract, she could cancel the activation,

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

932990.1                                4                    Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE

1  purchase, or extension with no early termination fee or other obligation (except for

2  services used up to the date of cancellation), and could receive a full refund for the

3  purchase price of any handset, minus any applicable restocking fee, if she returned it

4  in its original condition. *Id.*, ¶ 15.  Plaintiff did not cancel her service or return any

5  handsets within the trial period. *Id.*, ¶ 16.

6  ### D.   The Arbitration Agreement Was Disclosed Repeatedly

7      T-Mobile takes pains to make sure that customers are aware of the governing

8  Terms & Conditions and, in particular, the arbitration agreement.  In addition to

9  express references in contracts that subscribers sign in stores, the arbitration

10  agreement is also prominently set forth in a pamphlet containing the Terms &

11  Conditions, which is included in the box with wireless phones sold by T-Mobile.

12  Shwonek Decl., ¶¶ 18-19.  The Terms & Conditions are also available in T-Mobile

13  stores, online at www.T-Mobile.com by calling T-Mobile's toll free 1-800 Customer

14  Care number or dialing 611 from T-Mobile phone (also a free call). *Id.*, ¶ 19.

15      Here, the arbitration agreement was disclosed to Plaintiff (as it is to all T-

16  Mobile customers) in several places.  For example, the Service Agreement signed in

17  stores by customers incorporates the Terms & Conditions, and reflects customers'

18  acknowledgement that they have received and agree to be bound by them. *Id.*, ¶ 18.

19  Additionally, when customers exchange or upgrade phones they are provided with a

20  point of sale receipt, which also reflects the customers' acknowledgement to be

21  bound by T-Mobile's Terms & Conditions. *Id.*  In this case, Plaintiff specifically

22  agreed to be bound by the Terms & Conditions when she signed her upgrade

23  contract on July 22, 2010. *Id.*

24      At various times, the Terms & Conditions have also been included in a

25  Welcome Guide or by themselves in a pamphlet.  The T-Mobile Terms &

26  Conditions are also available in T-Mobile stores, online at www.T-Mobile.com by

27  calling T-Mobile's toll free 1-800 Customer Care number or dialing 611 from T-

28  Mobile phone (also a free call). *Id.*, ¶ 19.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

932990.1                                  5                           Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE

1   Customers have also been alerted about the Terms & Conditions and the
2   arbitration agreement by a sticker sealing the boxes containing handsets sold by T-
3   Mobile. *Id.*, ¶ 21. The sticker, which had to be broken to open the box, stated:
4   "IMPORTANT Read the enclosed T-Mobile Term & Conditions. By using T-
5   Mobile service, you agree to be bound by the Terms & Conditions, including the
6   mandatory arbitration and early termination fee provisions." *Id.*

7   **E.**   **The June 2010 Terms & Conditions Are Applicable To Plaintiff's**
8        **Service**

9        For present purposes, the July 18, 2010 version of the Terms &
10  Conditions is the contract applicable to Plaintiff and all lines of service on her
11  account. This is because Plaintiff accepted a handset upgrade offer from T-Mobile
12  and agreed to a contract extension on her "71" line of service on July 22, 2010.
13  Shwonek Decl., ¶ 22, Exs. B and C.

14       **1.**   **The Arbitration Agreement Is Prominently Displayed**
15       The arbitration agreement is prominently set forth in the Terms & Conditions.
16  It is mentioned at the outset of the Terms & Conditions:

17       **Please read these T&Cs carefully.** They cover important
18       information about T-Mobile services provided to you
19       ("Service"); your phone, handset, device, SIM card, data card,
20       or other equipment or third party device used with our Service
21       ("Device"). **These T&Cs include fees for early termination**
22       **and late payments, limitations of liability, privacy and**
23       **resolution of disputes by arbitration instead of in court.**
24  Shwonek Decl., ¶ 23, Ex. B, at 1 (emphasis in original). The arbitration provision
25  itself appears prominently in the second paragraph, again in emphasized type:

26       2. * **Dispute Resolution and Arbitration. WE EACH**
27       **AGREE THAT, EXCEPT AS PROVIDED BELOW . . .**
28       **ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY**

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

932990.1                                     6                        Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS AGAINST T-MOBILE

1 **RELATED TO OR CONCERNING THE AGREEMENT,**
2 **OUR SERVICES, DEVICES OR PRODUCTS,**
3 **INCLUDING ANY BILLING DISPUTES, WILL BE**
4 **RESOLVED BY BINDING ARBITRATION, RATHER**
5 **THAN IN COURT.**  This includes any claims against other
6 parties relating to Services or Devices provided or billed to you
7 (such as our suppliers or Dealers or third party vendors)
8 whenever you also assert claims against us in the same
9 proceeding.  We each also agree that the Agreement affects
10 interstate commerce so that the Federal Arbitration Act and
11 federal arbitration law apply (despite the choice of law
12 provision in Section 26).  THERE IS NO JUDGE OR JURY IN
13 ARBITRATION, AND COURT REVIEW OF AN
14 ARBITRATION AWARD IS LIMITED.  THE ARBITRATOR
15 MUST FOLLOW THIS AGREEMENT AND CAN AWARD
16 THE SAME DAMAGES AND RELIEF AS A COURT
17 (INCLUDING ATTORNEY'S FEES).

18 Shwonek Decl., ¶ 24, Ex. B, ¶ 2 (emphasis in original).

19     2.     <u>**T-Mobile's Arbitration Agreement Allows Full Remedies At**</u>
20     <u>**Minimal Cost**</u>

21     The agreement goes on to explain the arbitration process and procedure.
22 Arbitration under the T-Mobile agreement is inexpensive to subscribers.  The Terms
23 & Conditions provide that T-Mobile pays all fees and expenses of arbitration for all
24 claims up to $75,000.  Shwonek Decl., ¶ 24, Ex. B.

25     Arbitration is also designed to be convenient and efficient.  For example, a
26 consumer may choose to arbitrate based on written submissions only or in a

27
28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

932990.1         7         Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS AGAINST T-MOBILE

1  telephonic hearing.[2]  *Id.*, Ex. B.  All arbitrations are to be conducted by the American

2  Arbitration Association, pursuant to its rules, including procedures specific to

3  consumer disputes.[3]  *Id.*

4       The arbitration provision allows subscribers to obtain any relief on their

5  individual claims that would be available in court, including statutory damages,

6  attorneys' fees and costs, and injunctive relief.[4]  *Id.*  And, the provision goes even

7  further, giving subscribers a one-way right to recover attorneys' fees if they prevail in

8  arbitration, while T-Mobile foregoes rights to recover fees.[5]  *Id.*

9           **3.**    <ins>**Plaintiff Never Exercised Her Right To Opt Out Of**</ins>

10               <ins>**Arbitration**</ins>

11       In addition to allowing actions in small claims court instead of arbitration, the

12  Terms & Conditions also allow subscribers to opt out of the arbitration agreement

13  altogether:

14               **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN**

15

16  [2]  See AAA Supplementary Procedures for Consumer-Related Disputes, available

17  at www.adr.org/sp.asp?id=22014, which are incorporated as a part of the T-

18  Mobile arbitration agreement.  *See* Shwonek Decl., Ex. B.

    [3]  See www.adr.org/sp.asp?id=28752.

19

20  [4]  The agreement states this in two places.  *See* Shwonek Decl., Ex. B, ¶ 2 (an

    arbitrator "CAN AWARD THE SAME DAMAGES AND RELIEF AS A

21  COURT (INCLUDING ATTORNEY'S FEES)" (emphasis in original); *see also*

22  *id.* ("An arbitration may award on an individual basis any relief that would be

    available in a court, including injunctive or declaratory relief and attorney's

23  fees.")

24  [5]  The agreement provides: "[F]or claims under $75,000 as to which you provided

25  notice and negotiated in good faith as required above before initiating arbitration,

    if the arbitrator finds that you are the prevailing party in the arbitration, you will

26  be entitled to a recovery of reasonable attorney's fees and costs.  Except for

27  claims determined to be frivolous, T-Mobile agrees not to seek an award of

    attorneys' fees in arbitration even if an award is otherwise available under

28  applicable law."  Shwonek Decl., Ex. B.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

932990.1                   8              Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS AGAINST T-MOBILE

1    **COURT AND NOT BE ARBITRATION if . . . YOU OPT**

2    **OUT OF THESE ARBITRATION PROCEEDS WITHIN 30**

3    **DAYS FROM THE DATE YOU ACTIVATED THAT**

4    **PARTICULAR LINE OF SERVICE . . . .**

5    *See* Shwonek Decl., ¶ 25, Ex. B.  T-Mobile provides easy mechanisms to opt out,

6    either by calling a toll free number or completing a simple form available online.

7    *Id.*, Ex. B, ¶ 2; *see also www.t-mobiledisputeresolution.com*.  T-Mobile subscribers

8    who do choose to opt out experience no negative ramifications for doing so.  They

9    get all the same benefits, the same service, and the same price as subscribers who

10   chose to accept arbitration.  *Id.*, ¶ 25.

11          Plaintiff did not exercise her rights to opt out of arbitration.  *Id.*, ¶ 26.

12          **4.    Plaintiff's Contract Is Governed By Federal And California**

13                 **Law**

14          Finally, and also relevant to the present motion, the Terms & Conditions

15   provide that the governing law for each subscriber is the law of the subscriber's

16   home state:

17                 This Agreement is governed by the Federal Arbitration Act,

18                 applicable federal law, and the laws of the state in which your

19                 billing address in our records is located, without regard to

20                 conflicts of laws rules of that state. . . .

21   Shwonek Decl., ¶ 26, Ex. B, ¶ 25.  Throughout most of the time that Plaintiff was a

22   T-Mobile subscriber, her billing address was located in or near Los Angeles,

23   California.  On March 26, 2012, less than one month before she cancelled her T-

24   Mobile service, her billing address was changed to New York, New York.  *Id.*, ¶ 26.

25   Pursuant to her T-Mobile contract and federal law, the "place of primary use" for

26   service on her account was Los Angeles, California for all but one month of her T-

27   Mobile service.  *See id.*, Ex. B, ¶ 12; 4 U.S.C. §§ 122(a); 124(8).

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

932990.1                              9                    Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE

1   **F.   Plaintiff Has Not Agreed To Arbitrate Her Dispute With T-Mobile**

2   Despite T-Mobile's request to arbitrate, Plaintiff has not agreed to arbitrate

3   her claims against T-Mobile.  Declaration of Cameron Thomas, ¶¶ 1-3, Ex. D.

4   **V.   LEGAL ARGUMENT**

5   **A.   The FAA Reflects A Strong National Policy Favoring Arbitration**

6   Congress enacted the FAA more than 80 years ago "to reverse the

7   longstanding judicial hostility to arbitration agreements . . . and to place arbitration

8   agreements upon the same footing as other contracts."  *Gilmer v. Interstate/Johnson*

9   *Lane Corp.*, 500 U.S. 20, 24 (1991); *see also EEOC v. Waffle House, Inc.*, 534 U.S.

10  279, 289 (2002).  The FAA provides that written agreements to arbitrate disputes

11  "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law

12  or equity for the revocation of any contract."  9 U.S.C. § 2.

13  The FAA "declare[s] a national policy favoring arbitration."  *Preston v.*

14  *Ferrer*, 552 U.S. 346, 353 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. l,

15  10 (1984)).  In light of the FAA's purpose, a court must "move the parties to an

16  arbitrable dispute out of court and into arbitration as quickly and easily as possible,"

17  because a "prime objective" of arbitration "is to achieve 'streamlined proceedings

18  and expeditious results.'"  *Id.* at 357.  "[Q]uestions of arbitrability must be

19  addressed with a healthy regard for the federal policy favoring arbitration." *Moses*

20  *H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. l, 24 (1983).

21  As the Supreme Court recently reinforced in *Stolt-Nielsen S.A. v.*

22  *AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010), a court must "give effect to the

23  contractual rights and expectations of the parties" (quoting *Volt Info. Sciences, Inc.*

24  *v. Bd. of Trustees*, 489 U.S. 468, 479 (1989)), and agreements to arbitrate must be

25  enforced according to their terms, *id.* at 682 (citing *Mastrobuono v. Shearson*

26  *Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)); *see also id.* at 684 ("it follows that a

27  party may not be compelled under the FAA to submit to class arbitration unless

28  there is a contractual basis for concluding that the party *agreed* to do so." (emphasis

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

932990.1                                10                    Case No. 3:14-CV-2635-H-MDD

T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE

1   in original)).

2       The Court must grant a motion to compel arbitration if (1) a valid agreement

3   to arbitrate exists, and (2) the dispute falls within the scope of that agreement.

4   *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,* 207 F.3d 1126, 1130 (9th Cir. 2000).

5   Where both conditions are satisfied, the FAA "leaves no place for the exercise of

6   discretion by a district court, but instead mandates that district courts *shall* direct the

7   parties to proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213,

8   218 (1985) (emphasis in original); 9 U.S.C. § 4 ("upon being satisfied that the

9   making of the agreement for arbitration or the failure to comply therewith is not in

10  issue, the court shall make an order directing the parties to proceed to arbitration in

11  accordance with the terms of the agreement"). Both conditions are met here.

12  **B.   Plaintiff's Claims Fall Within The Scope Of The Arbitration**

13  **Agreement**

14      Plaintiff's claims against T-Mobile in this action are well within the scope of

15  the arbitration agreement, which is an "all disputes" clause, encompassing:

16          **ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY**

17          **RELATED TO OR CONCERNING THE AGREEMENT,**

18          **OUR SERVICES, DEVICES OR PRODUCTS,**

19          **INCLUDING ANY BILLING DISPUTES** . . . . This includes

20          any claims against other parties relating to Services or Devices

21          provided or billed to you (such as our suppliers, Dealers or third

22          party vendors) whenever you also assert claims against us in the

23          same proceeding.

24  Shwonek Dec., ¶ 24, Ex. B, ¶ 2. The Ninth Circuit has recognized that "all

25  disputes" clauses of this sort are "broad and far reaching" in scope, *Chiron Corp.*,

26  *supra*, 207 F.3d at 1131, and are "routinely used . . . to secure the broadest possible

27  arbitration coverage." *Britton v. Co-op Banking Group*, 4 F.3d 742, 745 (9th Cir.

28  1993). Such clauses require arbitration of all disputes that "touch matters" covered

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

932990.1                                          11                          Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS AGAINST T-MOBILE

1   by the contract defining the parties' relationship.  *Simula, Inc. v. Autoliv, Inc.*, 175

2   F.3d 716, 721 (9th Cir. 1999).[6]

3         Plaintiff's claims against T-Mobile plainly fall within the scope of the

4   arbitration agreement.  Despite the nature of Plaintiff's claims, they all relate to

5   Plaintiff's agreement with T-Mobile, the services provided by T-Mobile and her

6   handset device.  *See generally* Plaintiff's First Amended Complaint.  Thus,

7   Plaintiff's claims against T-Mobile directly challenge "services, devices or

8   products."

9         Accordingly, under the FAA, the Court is required to compel arbitration of

10   Plaintiff's claims unless they can establish that their agreements to arbitrate are

11   invalid.  Under the FAA, "the underlying issue of arbitrability [is] a question of

12   substantive federal law," *Southland Corp., supra*, 465 U.S. at 12, although state law

13   contract defenses such as fraud, duress or unconscionability may invalidate

14   arbitration agreements.  *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687

15   (1996).

16   **C.**     **The Contractual Choice Of Laws Is Enforceable**

17         In determining whether to enforce contractual choice-of-law provisions,

18   California courts[7] apply the principles set forth in section 187 of the Restatement

19   (Second) of Conflict of Laws.[8]  *See In re DirecTV Early Cancellation Fee Litig.*,

20   _____

21   [6]  Giving broad effect to "all disputes" clauses such as this is consistent too with
       the clear federal policy of the FAA that "[a]ny doubts concerning arbitrable

22   issues should be resolved in favor of arbitration." *Simula, supra*, 175 F.3d at 719;
       *see also AT&T Tech. Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650

23   (1986) (because there is a "presumption of arbitrability," an order to arbitrate
       should not be denied unless it may be said with positive assurance that the

24   arbitration clause is not susceptible of an interpretation that covers the asserted

25   dispute" (citations omitted)).

26   [7]  This Court, sitting in diversity, looks to the forum state's choice-of-law rules to
       determine controlling substantive law.  *Patton v. Cox*, 276 F.3d 493 (9th Cir.

27   2002).

28   [8]  Section 187 states that contractual choice-of-law provisions are to be enforced

T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE

1    2009 WL 2912656, *4 (C.D. Cal. Sept. 9, 2009); *Nedlloyd Lines B.V. v. Super. Ct.*,

2    3 Cal.4th 459, 464-65 (1992).  Section 187 reflects a strong policy favoring

3    enforcement of contractual choice-of-law provisions, a policy that applies equally to

4    standardized consumer contracts.  *In re DirecTV, supra*, 2009 WL 2912656, at *4;

5    *Washington Mut. Bank v. Super. Ct.*, 24 Cal.4th 906, 917-18 (2001).

6         T-Mobile's Terms & Conditions direct that, in addition to the FAA and

7    attendant federal law, the customer's home state's laws apply and govern the

8    enforceability of their arbitration agreements.  In this case, the Court must look to

9    California law.

10        **D.      The Arbitration Agreement Is Fully Enforceable Under California**

11                  **Law**

12        Prior to the Supreme Court's decision in *Concepcion, supra*, a motion to

13   compel arbitration would have been subject to the *Discover Bank* rule in California,

14   and therefore futile.  *See Discover Bank v. Super. Ct.*, 36 Cal.4th 148, 162 (2005)

15   (holding class action waivers in arbitration agreements unconscionable where found

16   in contracts of adhesion – now abrogated by *Concepcion*).  In *Concepcion*, the

17   Supreme Court found that the FAA preempts the *Discover Bank* rule, and held that

18   arbitration agreements and specifically, class action waivers in arbitration

19   agreements, are enforceable.  *Concepcion, supra*, 131 S.Ct. at 1753.

20        Nonetheless, "agreements to arbitrate [may] be invalidated by generally

21

22   unless:

23        (a) the chosen state has no substantial relationship to the parties or the
          transaction and there is no other reasonable basis for the parties' choice or
24        (b) application of the law of the chosen state would be contrary to a
          fundamental policy of a state which has a materially greater interest than the
25        chosen state in the determination of the particular issue and which, under the
          rule of s 188 would be the state of the applicable law in the absence of an
26        effective choice of law by the parties.
27

28   RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187.

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

932990.1                                    13                    Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE

applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Concepcion, supra,* 131 S.Ct. at 1746. In California, a party who seeks to avoid an arbitration agreement bears the burden of proving a valid defense. *See Engalla v. Permanente Med. Grp., Inc.*, 15 Cal.4th 951, 972 (1997). In this case, Plaintiff cannot prove fraud, duress, unconscionability or any other valid defense.

As shown and discussed above, the T-Mobile arbitration agreement is prominently featured and plainly worded, so that Plaintiff can claim no surprise about her obligation to arbitrate. A provision may entail surprise when "terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Gatton v. T-Mobile USA, Inc.,* 152 Cal.App.4th 571, 581 (2007). A provision may also entail surprise where specific terms were not presented in the agreement or where provisions are unclear. *Cardenas v. Chase Manhattan Bank USA, N.A.*, 2006 WL 1454778, at *9 (Cal. App. May 26, 2006). When the terms are not overly complex and can be easily understood, however, there can be no surprise. *Jackson v. S.A.W. Entm't Ltd.*, 629 F.Supp.2d 1018, 1023 (N.D. Cal. 2009). Moreover, when terms are capitalized, bolded, or not "buried in fine print," a court should not find surprise. *Id.*; *see also In re Jamster Marketing Litigation*, 2008 WL 4858506, at *5 (finding that T-Mobile arbitration agreement is conspicuous, uses understandable language and is set forth in large bolded letters); *Gatton v. T-Mobile USA, Inc.,* 2003 WL 21530185 (C.D. Cal. 2003) at *10 (finding T-Mobile arbitration provision was conspicuous).

Here, the Terms & Conditions that Plaintiff agreed to plainly disclose the arbitration agreement and opt-out rights. The arbitration agreement uses clear and understandable language and is capitalized and bolded in several places, to emphasize important points. It is not buried in the Terms & Conditions, it appears plainly in the second paragraph. Thus, no surprise exists here.

MUSICK, PEELER & GARRETT LLP
ATTORNEYS AT LAW

932990.1

14

Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS AGAINST T-MOBILE

1    The Ninth Circuit has also held that a meaningful opportunity to opt out
2    eliminates procedural unconscionability. *See Circuit City Stores, Inc. v. Ahmed*, 283
3    F.3d 1198, 1199-1200 (9th Cir. 2002); *Circuit City Stores, Inc. v. Najd*, 294 F.3d
4    1104, 1108 (9th Cir. 2002). Here, Plaintiff could have opted out of the arbitration
5    agreement, but she chose not to. She had a full and fair opportunity to enter into the
6    same contract without the arbitration agreement. Shwonek Decl., ¶ 25. She thus
7    was not forced to "adhere to the contract or reject it." *See Discover Bank, supra*, 36
8    Cal.4th at 160.

9    Because Plaintiff suffered no oppression or surprise, no procedural or
10   substantive unconscionability is present, and she should be compelled to arbitrate
11   her claims against T-Mobile. Additionally, there is no evidence of fraud or duress
12   because Plaintiff voluntarily accepted T-Mobile's Terms & Conditions, including
13   the arbitration provision.

14   **E.      The FAA Would Preempt A Determination That Plaintiff's**
15   **Arbitration Agreement Is Unenforceable**

16   Even if this Court were to decide that California law dictates that the T-
17   Mobile arbitration agreement accepted by Plaintiff is unenforceable, then such a rule
18   would be preempted by the FAA. The Supreme Court clearly stated "[w]hen state
19   law prohibits outright the arbitration of a particular type of claim, the analysis is
20   straightforward: The conflicting rule is displaced by the FAA." *Concepcion, supra*,
21   131 S.Ct. at 1747.

22   The central or primary purpose of the FAA is to ensure that "private
23   agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen, supra*,
24   130 S.Ct. at 1773 (quoting *Volt Info. Scis., Inc.*, 489 U.S. at 479). At the heart of the
25   FAA is the equal footing requirement of section 2 – that arbitration agreements must
26   be enforced "save upon such grounds as exist at law or in equity for the revocation
27   of any contract." 9 U.S.C. § 2 (emphasis added). In other words, where state law
28   seeks to condition the enforceability of arbitration agreements on compliance with

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

932990.1                                           15                          Case No. 3:14-CV-2635-H-MDD
T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE

1   special requirements that are not applicable to all contracts generally, the state-law

2   rule is preempted by section 2 of the FAA.  *See Doctor's Assocs., supra,* 517 U.S. at

3   687 (state law notice requirement for arbitration clauses preempted under FAA).

4         If California law – *i.e.*, application of the *Discover Bank* test – renders T-

5   Mobile's arbitration agreement unconscionable under the circumstances present

6   here, the law relating to consumer arbitration agreements would bear no

7   resemblance to California's traditional unconscionability standards.  It would be a

8   rule unique to arbitration agreements and not a state law principle generally

9   applicable to any contract.

10         For example, in all other contexts, California law requires that both

11   procedural and substantive unconscionability must be established to render an

12   agreement unenforceable.  *Discover Bank, supra*, 36 Cal.4th at 160, but here the rule

13   would be different.  Plaintiff can show no procedural unconscionability, given that

14   she had a free and fair right to opt out of the arbitration agreement but chose not to.

15         Second, California's traditional analysis of unconscionability considers

16   whether a contract is unconscionable at the time the parties entered into it, not

17   whether it is unconscionable in light of subsequent events.  *See Am. Software, Inc. v.*

18   *Ali*, 46 Cal.App.4th 1386, 1391-92 (1996).  In the context of arbitration agreements,

19   however, the unconscionability determination is made based on the allegations in a

20   plaintiff's complaint.  *Discover Bank, supra*, 36 Cal.4th at 162-63 (third factor of

21   test is whether "it is alleged that the party with the superior bargaining power has

22   carried out a scheme to deliberately cheat large numbers of consumers out of

23   individually small sums of money.")

24         Third, under traditional California law outside of dispute resolution

25   agreements, California courts consider the fairness of the challenged provision to the

26   parties before the court.  *See, e.g., Wayne v. Staples, Inc.*, 135 Cal.App.4th 466, 483

27   (2006).  To hold that T-Mobile's arbitration agreement is unconscionable would be

28   to all but completely ignore the agreement that the parties made.

MUSICK, PEELER
& GARRETT LLP
ATTORNEYS AT LAW

932990.1

16

Case No. 3:14-CV-2635-H-MDD

T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE

1   Finally, California law outside of the context of arbitration agreements has
2   long held that a contract is not oppressive or unconscionable if a party has other
3   alternatives, such as going elsewhere in the market for goods or services. *See, e.g.,*
4   *Dean Witter Reynolds, Inc. v. Super. Ct.*, 211 Cal.App.3d 758, 771 (1989).  To hold
5   that Plaintiff's agreement with T-Mobile is unconscionable, however, would mean
6   that an arbitration agreement can be invalidated no matter how many alternatives a
7   party had, including the option to reject the arbitration agreement altogether.
8   In the end, a determination that the T-Mobile agreement is unconscionable
9   would amount to a *per se* rule against individual consumer arbitration, and such a
10  rule would be preempted by the FAA.

11  **VI.   CONCLUSION**
12  Based on the foregoing, T-Mobile respectfully requests that the Court grant
13  its motion to compel arbitration and stay all claims against T-Mobile in this
14  litigation.  9 U.S.C. § 4.

15
16  DATED:  February 20, 2015          MUSICK, PEELER & GARRETT LLP
17
18
19                                     By:  _____/s/_____
20                                          Cameron W. Thomas
                                            Attorneys for Defendant T-MOBILE USA,
21                                          INC.
22
23
24
25
26
27
28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

932990.1                          17                 Case No. 3:14-CV-2635-H-MDD
                T-MOBILE USA, INC.'S NOTICE OF MOTION AND
        MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE

1

## PROOF OF SERVICE

2

3 **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

4       At the time of service, I was over 18 years of age and not a party to this
action.  I am employed in the County of Los Angeles, State of California.  My
5 business address is One Wilshire Boulevard, Suite 2000, Los Angeles, CA 90017-
3383.

6

7       On February 24, 2015, I served true copies of the following document(s)
described as **T-MOBILE USA, INC.'S NOTICE OF MOTION AND MOTION
TO COMPEL ARBITRATION AND STAY CLAIMS AGAINST T-MOBILE**
8 on the interested parties in this action as follows:

9

10 John P. Kristensen, Esq.                    Mark K. Slater, Esq.
David L. Weisberg, Esq.                      Neil J. Cooper, Esq.
Kristensen Weisberg, LLP                     Slater Hersey & Lieberman LLP
11 12304 Santa Monica Blvd., Suite 221          18301 Von Karman Avenue, Suite 1060
Los Angeles, California 90025                Irvine, California 92612
12 Telephone:  (310) 507-7924                   Telephone:  (949) 398-7506
Facsimile:  (310) 507-7906                   Facsimile:  (949) 398-7500

13

14 Attorneys for Plaintiff                      Attorneys for Defendant
M. STRASNER                                  INGRAM MICRO INC.

15

16       **BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed
the document(s) with the Clerk of the Court by using the CM/ECF system.
17 Participants in the case who are registered CM/ECF users will be served by the
CM/ECF system.  Participants in the case who are not registered CM/ECF users will
be served by mail or by other means permitted by the court rules.

18

19       I declare under penalty of perjury under the laws of the United States of
America that the foregoing is true and correct and that I am employed in the office
of a member of the bar of this Court at whose direction the service was made.

20

21       Executed on February 24, 2015, at Los Angeles, California.

22

23 _Claire C. De Los Reyes_
Claire C. De Los Reyes

24

25

26

27

28

MUSICK, PEELER
& GARRETT LLP

ATTORNEYS AT LAW

932990.1                                    i                    Case No. 3:14-CV-2635-H-MDD

T-MOBILE USA, INC.'S NOTICE OF MOTION AND
MOTION TO COMPEL ARBITRATION AND STAY CLAIMS  AGAINST T-MOBILE